

1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant United States Attorney
3  California Bar Number 234139
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6760
   Facsimile: (619) 235-2757
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )      Criminal Case No.  08CR0800-BEN
                                     )
12                                   )      UNITED STATES' RESPONSE AND
                                     )      OPPOSITION TO DEFENDANT'S
13                                   )      MOTIONS TO:
                       Plaintiff,    )
14                                   )      (1)    COMPEL DISCOVERY AND
            v.                       )             PRESERVE EVIDENCE AND
15                                   )      (2)    DISMISS THE INDICTMENT DUE
                                     )             TO GRAND JURY
16                                   )             EMPANELMENT
    MARIO SAMANIEGO-CANTO,           )
17                                   )
                                     )
18                                   )      Date:        May 19, 2008
                                     )      Time:        2:00 p.m.
19                     Defendant.    )      Honorable:   Roger T. Benitez
                                     )
20                                   )
                                     )
21  _____ )

22          Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States

23  Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Response and

24  Opposition to Defendant's Motion for Discovery.  This Response and Opposition is based upon the files

25  and records of the case together with the attached statement of facts and memorandum of points and

26  authorities.

27  ///

28  ///

# I

## STATEMENT OF FACTS

### A.    Defendant's Criminal and Immigration Record

Defendant, Mario Samaniego-Canto, is a 27-year-old citizen of Mexico.  He has a serious criminal record in the United States, with multiple convictions in Washington state.  Defendant was convicted of felony theft in 1996.  In 1999, Defendant was sentenced to 365 days in jail for assault/ domestic violence.  In 2000, Defendant was twice convicted of violating a no-contact court order.  Also in that year, Defendant was convicted of failing to comply with the conditions of his sentence and received a 364 day sentence.  In 2004, Defendant was convicted of assault and received a sentence of 365 days in jail.  In 2006, Defendant graduated to first degree robbery, convicted of violating Washington RCW §§ 9A.56.190 and 9A.56.200(1)(c).   Under those Washington code sections, first degree robbery must involve infliction of bodily injury in the course of the robbery.  For that offense, Defendant was sentenced to 41 months in prison.

At one point in time, Defendant had permanent resident status.  On March 1, 2000, the government sent Defendant a Notice to Appear before an immigration judge, alleging that Defendant was deportable because he was an alien who had violated a court protection order, pursuant to section 237(a)(2)(E)(ii) of the Immigration and Nationality Act.  In June of 2000, Defendant's immigration attorney filed an application for cancellation of removal for certain permanent aliens, attaching a giant stack of supporting documents.  On July 10, 2000, Immigration Judge Ho granted Defendant's application for cancellation of removal.

Following Defendant's conviction for first degree robbery, the government again sent Defendant a Notice to Appear before an immigration judge, alleging that Defendant was deportable because he had committed an aggravated felony, pursuant to section 237 or 241 of the Immigration and Nationality Act. On November 28, 2007, Immigration Judge Opaciuch ordered Defendant removed from the United States. On December 1, 2007, Defendant was removed through the San Ysidro Port of Entry.

**B.    Defendant's Apprehension**

About a month after being deported, Defendant illegally re-entered the United States. On January 5, 2008, at about 1:30 p.m., Border Patrol Agent Worley responded to a report of possible illegal entry activity in an area known as Airport Mesa. Airport Mesa is located about three hundred yards north of the international border and about three and a half miles east of the San Ysidro port of entry. This area is notorious for the presence of illegal aliens attempting to further their entry into the United States.

Upon arriving, Agent Worley found Defendant trying to conceal himself in some dense brush. Agent Worley identified himself and conducted a brief immigration field-interview. Defendant admitted that he was a Mexican citizen with no documents allowing him to enter the United States. Defendant was arrested and taken to the Imperial Beach Border Patrol station for further processing.

At the station, database searches revealed Defendant's extensive criminal history and deportation order. At about 5:09 p.m., Agent Worley advised Defendant of his right to speak to a Mexican consular official, a right that Defendant declined to exercise. At about 5:13 p.m., Agent Worley advised Defendant of his Miranda rights. Defendant agreed to speak with agents without the presence of an attorney. Defendant, in a videotaped interview, admitted he was a Mexican citizen who had no permission to re-enter the United States after deportation.

On February 5, 2008, Defendant waived indictment and was arraigned on a multiple-count information in case 08CR0281, charging him with violating 8 U.S.C. § 1325. The matter was set for a guilty plea before judge Porter on February 21, 2008. That guilty plea did not take place. On March 6, 2008, Defendant appeared for the guilty plea, but stated he was unwilling to plead guilty at that time.

On March 19, 2008, a federal grand jury for the Southern District of California returned a one-count Indictment against Defendant. Defendant is charged with being an alien who attempted to enter the United States without the consent of the Attorney General or the Secretary of Homeland Security, after having been previously excluded, deported, or removed, in violation of Title 8 U.S.C. § 1326. The Indictment further alleged that Defendant was removed from the United States subsequent to February 28, 2006. After Defendant was arraigned on the Indictment, the court granted the government's motion to dismiss case 08CR0281.

**II**

**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.    ORDER COMPELLING DISCOVERY IS UNNECESSARY**

    No Order is Required; The United States is Complying With Discovery Obligations

    The United States has produced 325 pages of discovery as of the filing of this response.  Defense counsel has also received copies of the non-privileged documents from Defendant's A-file.  The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

    1.    Defendant's Statements

    The United States has already provided defense counsel with an incident report detailing his brief statements in primary inspection, as well as a report detailing Defendant's post-arrest statements and a videotape of those statements.

    2.    Arrest Reports, Notes

    The United States has provided Defendant with the report related to Defendant's arrest in this case.  The United States will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

    The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents that are available at this time.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, the Government objects to providing Defendant with a copy of any available rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the

notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### 3.    Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963).   Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision."  United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality.  Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense."  United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).  Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

### 4.    Information that May Result in a Lower Sentence

The Government is unaware of any mitigating information in this case, and recognizes that Defendant's lengthy history of criminal and immigration violations is aggravating information.

### 5.    Defendant's Prior Record

The United States has provided Defendant with a copy of all documents relating to Defendant's prior criminal record within the Government's possession, custody, or control and, consequently, has

1  fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d

2  129 (9th Cir. 1990). To the extent that the United States determines that there are any additional

3  documents reflecting Defendant's prior criminal record, the United States will provide those to

4  Defendant.

5          6.     404(b) and 609 Evidence

6  _____The United States will disclose in advance of trial the general nature of any "other bad acts"

7  evidence that it  intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior

8  convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include

9  charging and conviction documents from Defendant's state court criminal case.

10         7.     Evidence Seized

11  _____The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

12  in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

13  evidence seized that is within its possession, custody, or control, and that is either material to the

14  preparation of Defendant's defense, or is intended for use by the United States as evidence during its

15  case-in-chief at trial, or was obtained from or belongs to Defendant.

16         The United States need not, however, produce rebuttal evidence in advance of trial. United

17  States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

18         8.     Preservation of Evidence

19         The United States will preserve all evidence to which the defendant is entitled to pursuant to the

20  relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence.

21  The physical evidence likely to be used in this case will consist of fingerprint exemplars gathered from

22  Defendant. The fingerprint cards will be preserved. There are no other obvious items of physical

23  evidence to preserve.

24         Henthorn Material

25         In advance of trial, the Government will arrange for agencies to conduct a review of the

26  witnesses' personnel files, to determine if there is any information that could be used for impeachment

27  of the witness.

28         9.     Tangible Objects

1    The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

2    in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible

3    objects that are within its possession, custody, or control, and that is either material to the preparation

4    of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief

5    at trial, or was obtained from or belongs to Defendant. If color photographs will be used at trial,

6    Defendant will receive copies in advance.

7           10.   <u>Expert Witnesses</u>

8    The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with

9    notice and a written summary of any expert testimony that the United States intends to use during its

10   case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

11          11.   <u>Evidence of Bias or Motive to Lie</u>

12   Defendant requests evidence showing bias motive to falsify or distort testimony. The United

13   States recognizes its obligation to provide information related to the prejudice, bias or other motive to

14   slant testimony of trial witnesses, as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). At this time,

15   the United States is unaware of any prospective witness who is biased or prejudiced against Defendant

16   or who has a motive to falsify or distort his or her testimony.

17          12.   <u>Impeachment Evidence</u>

18         The United States acknowledges its obligation to provide impeachment information about its

19   witnesses that meets the relevant standard of materiality, i.e., "when the reliability of the witness may

20   be determinative of a criminal defendant's guilt or innocence." <u>Blanco</u>, 392 F.3d at 387. The United

21   States has or will comply with its obligation.

22          13.   <u>Evidence of Criminal Investigation of Government Witness</u>

23         The United States recognizes and will comply with its obligations under the case law and

24   discovery rules to disclose exculpatory information and impeachment information. To the extent such

25   disclosures are not required by the case law and rules, the United States opposes Defendant's broad

26   request for evidence of any disciplinary investigations into prospective witnesses by federal, state or

27   local authorities, regardless of the outcome of the investigations. Moreover, as discussed above, the

28   United States has no obligation to disclose information not within its possession. <u>See</u> <u>United States v.</u>

1  <u>Gatto</u>, 763 F.2d 1040, 1048 (9th Cir. 1985); <u>United States v. Aichele</u>, 941 F.2d 761, 764 (9th Cir. 1991)

2  (California state prisoner's files outside of federal prosecutor's possession); <u>United States v. Chavez-</u>

3  <u>Vernaza</u>, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state

4  officials documents of which it was aware but over which it had no actual control); cf. <u>Beavers v. U.S.</u>,

5  351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United

6  States which is in possession of United States and does not apply to a recording in possession of state

7  authorities).

8          14.    <u>Evidence Affecting Perception and Memory</u>

9       The United States is unaware of any evidence that any government witness's physical ability to

10  perceive, recollect or communicate or commitment to tell the truth is impaired. The United States

11  opposes the request for information that a witness has ever used narcotics or other controlled substance,

12  or has ever been an alcoholic. This request is overly broad and ignores the standard of materiality set

13  forth in <u>Brady</u> for exculpatory or impeachment information.

14          15.    <u>Jencks Act Material</u>

15       The United States has or will comply with the disclosure requirements of the Jencks Act. For

16  purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

17  otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

18  transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18

19  U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act

20  if the statements are adopted by the witness, as when the notes are read back to a witness to see whether

21  or not the government agent correctly understood what the witness was saying. <u>United States v. Boshell</u>,

22  952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)). By the

23  same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete

24  nature of the notes." <u>United States v. Cedano-Arellano</u>, 332 F.3d 568, 571 (9th Cir. 2004).

25       The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

26          16.    <u>Giglio Information</u>

27       The United States will comply with the requirements of <u>Giglio v. United States</u>, 405 U.S. 150

28  (1972).

1        17-19.  Informants and Cooperating Witnesses

2        At this time, the United States is not aware of any confidential informants or cooperating

3   witnesses involved in this case.  The government must generally disclose the identity of informants

4   where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense.

5   Roviaro v. United States, 353 U.S. 53, 59 (1957).  These threshold requirements have been interpreted

6   to require that, if any cooperating witnesses or informants were involved or become involved, Defendant

7   must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer

8   was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing

9   regarding disclosure of the informer's identity.  United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-

10  87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957).  Any bias issues will be

11  handled pursuant to Brady.

12        20.     Inspection and Copying of A-file

13        The Government has provided a copy of all discoverable documents taken from Defendant's A-

14  file.

15        22.     Residual Request

16        As stated above, the United States will comply with its discovery obligations in a timely manner.

17  **B.     THE GRAND JURY WAS NOT MIS-INSTRUCTED**

18        Defendant moves to dismiss the indictment against him for alleged errors in this Court's

19  instruction of the grand jury panel.  The United States explicitly incorporates by reference the briefing

20  on this issue submitted in United States v. Bermudez-Jimenez, 07CR1372-JAH, and United States v.

21  Martinez-Covarrubias, 07CR0491-BTM.  This motion has been denied by each court that has considered

22  it, and should also be denied in this case.

23                                          **III**

24                **UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

25        Defendant has invoked Fed. R. Crim.  P. 16(a) and the United States has voluntarily

26  complied with the requirements of Rule 16(a).  Therefore, provision 16(b) of that rule, requiring

27  reciprocal discovery, is applicable.  The United States hereby requests Defendant to permit the

28  United States to inspect, copy, and photograph any and all books, papers, documents, photographs,

1  tangible objects, or make copies of portions thereof, which are within the possession, custody or

2  control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

3        The United States further requests that it be permitted to inspect and copy or photograph any

4  results or reports of physical or mental examinations and of scientific tests or experiments made in

5  connection with this case, which are in the possession or control of Defendant, which he intends to

6  introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant

7  intends to call as a witness.  The United States also requests that the court make such orders as it

8  deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery

9  to which it is entitled.

10        Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all

11  witnesses, except Defendant.  The time frame established by the rule requires the statement to be

12  provided after the witness has testified, as in the Jencks Act.  The United States hereby requests that

13  Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before

14  trial to be set by the court.  This order should include any form these statements are memorialized in,

15  including but not limited to, tape recordings, handwritten or typed notes and/or reports.

16                                              **IV**

17        **MOTION TO COMPEL FINGERPRINT EXEMPLARS**

18        As part of its case, the United States must prove that Defendant was previously deported

19  from the United States.  To prove this element, the United States anticipates calling a certified

20  fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the

21  warrants of deportation and other deportation documents.  A number of chain of custody witnesses

22  could be eliminated, and judicial resources conserved, by permitting the Government's expert to take

23  Defendant's fingerprints himself.  The Defendant's fingerprints are not testimonial evidence.  See

24  Schmerber v. California, 384 U.S. 757 (1966).  Further, using identifying physical characteristics,

25  such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination.

26  United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156

27  (9th Cir. 1968); see also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987).

28  Accordingly, the Government requests that the Court order that Defendant make himself available

1  for fingerprinting by the Government's fingerprint expert.

2                                          **V**

3                                  **CONCLUSION**

4          For the foregoing reasons, the United States respectfully requests that Defendant's motions,

5  except where not opposed, be denied and the United States' motion for reciprocal discovery and

6  fingerprint exemplars be granted.

7          DATED:  May 12, 2008

8                                                  Respectfully Submitted,

9                                                  KAREN P. HEWITT
                                                   United States Attorney

10                                                 */s/ Christina M. McCall*

11                                                 CHRISTINA M. McCALL
12                                                 Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )    Case No. 08CR0800-BEN
                             )
            Plaintiff,       )    **CERTIFICATE OF SERVICE**
                             )
        v.                   )
                             )
MARIO SAMANIEGO-CANTO,       )
                             )
            Defendant.       )
_____)

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years

of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND DISMISS

INDICTMENT on the following parties by electronically filing the foregoing with the Clerk of the

District Court using its ECF System, which electronically notifies them.

        Sara Peloquin

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008.

                                    /s/ Christina M. McCall

                                    CHRISTINA M. McCALL